UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
STATE NATIONAL INSURANCE COMPANY, :
Individually and as Subrogee on behalf of 96    :
WYTHE ACQUISITION, LLC and DIMYON         :
DEVELOPMENT CORP.,                                       :         **OPINION & ORDER**
                                                                          :
                                      Plaintiff,                  :         19-CV-06625 (PK)
                                                                   :
                          -against-                                       :
                                                                 :
MT. HAWLEY INSURANCE COMPANY,            :
                                                                 :
                                        Defendant.            :
------------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

       Plaintiff State National Insurance Company ("SNIC"), individually and as subrogee on behalf of 96 Wythe Acquisition, LLC and Dimyon Development Corp., brought this declaratory judgment and breach of contract action against Defendant Mt. Hawley Insurance Company ("Mt. Hawley"). (Compl., Dkt. 1.) The parties have cross-moved for summary judgment. ("Plaintiff's Motion for Summary Judgment," Dkt. 21; "Mt. Hawley Insurance Company's Motion for Summary Judgment," Dkt. 22.) For the reasons stated below, Mt. Hawley's motion is granted, and SNIC's motion is denied.

## BACKGROUND

**I.    Factual Background**

       The following facts are taken from Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. 56.1," Dkt. 21-1), Defendant's Rule 56.1 Counterstatement of Material Facts ("Def. Counter 56.1," Dkt. 25), Defendants Rule 56.1 Statement of Material Facts ("Def. 56.1," Dkt. 23), Plaintiff's Rule 56.1 Counterstatement of Material Facts ("Pl. Counter 56.1," Dkt. 23), and the exhibits to those Statements.

          **A.    The Project and Subcontract**

       96 Wythe Acquisition, LLC ("Wythe"), the owner of a premises at 96 Wythe Avenue,

1

Brooklyn, New York, contracted with Dimyon Development Corp. ("Dimyon") to act as the general contractor in constructing an eight-story hotel at that location (the "Project"). (Pl. 56.1 ¶¶ 1-2; Def. 56.1 ¶¶ 1-3.) Dimyon entered into a subcontract dated August 6, 2015 (the "Subcontract," Dkt. 21-3)[1] with an entity doing business as Fire Seal to perform interior insulation work on the Project. (Pl. 56.1 ¶ 3.; Def. Counter 56.1 ¶¶ 3-4.) Fire Seal is the dba name for Spray Foam Group USA, Inc., dba A1 Spray Foam Insulation ("Spray Foam" or the "Subcontractor"). (See Dkt. 21-16 at 2, 5 (listing the dba names for Spray Foam)[2]; Pl. 56.1 ¶ 3.)

The Subcontract required the Subcontractor to name Wythe and Dimyon as "additional insureds" on the Subcontractor's insurance policies:

> The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for both ongoing and completed operations for the benefit of the Developer and anyone else the Developer is required to name (as set forth in the annexed Exhibit "B") … The insurance required to be carried by the Subcontractor and any Sub-subcontractors shall be PRIMARY AND NON-CONTRIBUTORY. This specifically includes the Umbrella or Excess policy as it follows form over the General Liability policy. With respect to each type of insurance specified hereunder, the Developer's insurances shall be excess to Subcontractor's insurance.

(Subcontract at 3; Pl. 56.1 ¶ 4.) Dimyon is the "Developer" under the contract. (Subcontract at 1.) No Exhibit B is annexed to the contract, but there is a "Subcontract Agreement Rider" that names Dimyon and Wythe as "Additional Insureds." (Subcontract at 16-17.)

The Subcontract also contains a broad indemnification clause that required the Subcontractor "[t]o the fullest extent permitted by law" to indemnify Wythe and Dimyon. (Subcontract at 2, 16-17.)

The Subcontract required the Subcontractor to maintain insurance coverages, including $5,000,000 (per occurrence and in aggregate) in Commercial General Liability, $1,000,000 (in

---

[1] Both parties attached several exhibits to their respective motions, some of which are identical. Where the same exhibit has been submitted by both parties, the Court refers only to the docket number for SNIC's exhibit for simplicity and clarity.

[2] The page references to Dkt. 21-16 are to the ECF page numbers.

aggregate) in Workers Compensation and Disability Benefit insurance, and $5,000,000 (per occurrence and in aggregate) in Excess or Umbrella Liability insurance.  (Subcontract at 4.)  The Subcontract further required the Subcontractor to provide Dimyon with certificates of insurance showing that Dimyon was an additional insured under those mandated coverages.  (Subcontract at 3-4.)  The certificate was required to include an "endorsement or policy form providing that the General Liability and Excess/Umbrella policies are primary and will not seek contribution from Developer." (Subcontract at 4.)

      **B.**      **The Underlying Action**

On May 10, 2016, Aronds Milord was allegedly injured after falling from a ladder while working for Spray Foam on the Project.  (Pl. 56.1 at 4 ¶ 9[3]; Def. 56.1 ¶¶ 8-9; Pl. Counter 56.1 ¶ 9.)  On May 25, 2016, Milord brought an action against Dimyon and Wythe in Supreme Court, Kings County under New York Labor Law §§ 200, 240(1), 240(2), 240(3), 241(6) and common law negligence, in a case captioned *Milord v. 96 Wythe Acquisition, LLC et al.* (the "Milord Action").[4]  (Dkt. 21-4; Dkt. 21-20 at 2; Pl. 56.1 at 4 ¶ 10; Def. 56.1 ¶ 10.)

On November 9, 2016, Wythe and Dimyon filed a third-party complaint against Spray Foam Group USA, Inc. and Spray Foam Group, LLC for contractual indemnification and negligence (the "Third-Party Action," and collectively with the Milord Action, the "Underlying Action.").  (Pl. 56.1 ¶ 14; Def. 56.1 ¶ 12; Dkt. 21-6.)

      **C.**      **The Insurance Policies**

            **1.**      *The SNIC Policy*

SNIC issued a Commercial General Liability ("CGL") insurance policy with a $1,000,000 per-

---

[3] Plaintiff's Rule 56.1 Statement is misnumbered, with two paragraphs 9 and 10. (Dkt. 21-1 at 3-4.) Where reference to either paragraphs 9 or 10 is necessary, the Court includes the page number for clarity.

[4] Another defendant was named in the suit, but that party is not relevant to this case.  On January 23, 2017, the complaint in the Milord Action was amended. (Pl. 56.1 ¶ 11; Dkt. 21-5.)

occurrence limit to Wythe and Dimyon for a policy period of September 28, 2012 through September 6, 2016 (the "SNIC Policy").  (Pl. 56.1 ¶¶ 27-28; Def. 56.1 ¶¶ 13-15; the SNIC Policy, Dkt. 21-17.) The SNIC Policy identifies itself as a primary insurance, specifying,

> a. **Primary Insurance**
>
> This insurance is primary except when b. below applies.   If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.
> ….
>
> b. **Excess Insurance**
>
> This insurance is excess over:
> …
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(SNIC Policy at 16.[5])

### 2. *The Admiral Policy*

Admiral Insurance Company ("Admiral") issued a CGL policy to Spray Foam with a $1,000,000 per-occurrence limit for the period of March 13, 2016 through March 13, 2017.  (Pl. 56.1 ¶¶ 18-19; Def. 56.1 ¶¶ 17-18; the Admiral Policy, Dkt. 21-16.)[6]

The "Common Policy Declarations" of the Admiral Policy indicate that Spray Foam is the Named Insured. (Admiral Policy at 5.[7])  The Admiral Policy also includes an endorsement "Additional Insured—Owners, Lessees or Contractors—Scheduled Person or Organization," that modifies the "Who Is An Insured" section of the Admiral Policy to include additional insured persons and

---

[5] The page references to the SNIC Policy are to the ECF page numbers.

[6] Plaintiff's Rule 56.1 Statement describes the Admiral Policy as a "primary Commercial General Liability insurance policy" (Pl. 56.1 ¶ 18), although in its Counterstatement of Material Facts, SNIC denies that the Admiral Policy is a "primary policy" and directs the Court to the Admiral Policy. (Pl. Counter 56.1 ¶ 18.)  The Court considers the plain language of the Admiral Policy attached to both parties' Motions.

[7] The page references to the Admiral Policy are to the ECF page numbers.

organizations. (Def. 56.1 ¶ 19; Admiral Policy at 18-19, 26-27.) This endorsement, directed at Spray Foam as the named insured, reads:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1.  Your acts or omissions; or
>
> 2.  The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated [in the endorsement].

(Admiral Policy at 26; Def. 56.1 ¶ 19.) The Schedule adds as additional insured

> Any person or organization that is an owner of real property or personal property on which you are performing ongoing operations, or a contractor on whose behalf you are performing ongoing operations, but only if coverage as an additional insured is required by a written contract or written agreement that is an "insured contract", and provided the "bodily injury" or "property damage" first occurs … subsequent to the execution of the contract or agreement.

(Admiral Policy at 26; Def. 56.1 ¶ 20.)

### 3. *The Mt. Hawley Policy*

Mt. Hawley issued a "Commercial Excess Liability Policy" with a $2,000,000 per-occurrence limit to Spray Foam for the period from April 7, 2016 to March 13, 2017. (Pl. 56.1 ¶¶ 22-23; Def. 56.1 ¶¶ 21-23; the Mt. Hawley Policy, Dkt. 21-18 at 5, 9[8].)

In the section titled "Coverage," the Mt. Hawley Policy states, "Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by the **underlying insurance**." (Mt. Hawley Policy at 9; Def. 56.1 ¶ 24.) "Ultimate net loss" is defined as

> all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this

---

[8] The page references to the Mt. Hawley policy are to the ECF page numbers.

policy, reduced by all recoveries or salvage.

(Mt. Hawley Policy at 10; Def. 56.1 ¶ 25.) "Underlying insurance" is defined as "the policy or policies of insurance in the Schedule of Underlying Insurance." (Mt. Hawley Policy at 10; Def. 56.1 ¶ 25.) The "Schedule of Underlying Insurance" includes the Admiral Policy. (Mt. Hawley Policy at 8; Def. 56.1 ¶ 27.)

The Mt. Hawley Policy provides coverage "only in excess of the **underlying insurance** [and] only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance…" (Mt. Hawley Policy at 9; *see also* Def. 56.1 ¶ 23-24.) The Mt. Hawley Policy states, "This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the underlying insurance in all respects." (Mt. Hawley Policy at 9; Def. 56.1 ¶¶ 23-24.)

The Mt. Hawley Policy also has an "Other Insurance" provision, which states:

> If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess to the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance. This provision applies to, but is not limited to, insurance available to any insured as an additional insured under primary or excess policies.

(Mt. Hawley Policy at 14-15.)

The Mt. Hawley Policy includes an "Additional Insureds Endorsement" that amends the definition of "insured" to include "additional insureds" from the underlying insurance as follows:

> A person or organization who is an additional insured under the **underlying insurance** qualifies as an insured under this policy only if such person or organization and the named insured under the **underlying insurance** entered into a written agreement signed by both parties prior to the date of **"occurrence" or offense**, requiring additional insured coverage for such person or organization under the named insured's commercial general liability coverage. Furthermore, such person or organization is an insured under this policy only for **ultimate net loss** caused by:
>
> 1. Your [Spray Foam's] negligence; or
>
> 2. The negligence of those acting on your behalf;

6

In the performance of your ongoing operations for the additional insured.

(*Id.* at 27; Pl. 56.1 ¶ 26; Def. 56.1 ¶ 28.)

### D.     The Mt. Hawley Disclaimer Letter

Wythe and Dimyon tendered the Milord Action for defense and indemnity to Admiral. (Pl. 56.1 ¶¶ 29, 31; Def. 56.1 ¶ 34-35; Dkt. 22-16; *see also* Dkt. 21-9.) Admiral conditionally accepted the tender under the Admiral Policy's "Additional Insured" endorsement, while reserving the right to change its position if it discovered that Wythe and Dimyon were not "additional insureds." (Dkt. 21-9 at 1, 8-9.) Admiral made various other reservations of rights under the Admiral Policy. (*See* Def. 56.1 ¶¶ 36-37; Dkt. 21-9 at 1, 8-10.) Admiral expressly denied coverage for any contractual indemnification claims. (Dkt. 21-9 at 1, 10.)

Wythe and Dimyon also tendered the action for defense and indemnity to Mt. Hawley. In a letter dated October 24, 2016 to Wythe, Dimyon and Spray Foam, Mt. Hawley disclaimed coverage. (Pl. 56.1 ¶¶ 30, 32; Def. 56.1 ¶ 31; *see also* "Disclaimer Letter," Dkt. 21-8.)

In the Disclaimer Letter, Mt. Hawley expressly "disclaims coverage against Spray Foam, any purported insured and all others with respect to any claim based on the assumption of liability in a contract or agreement." (Disclaimer Letter at 6.) It also disclaimed coverage based on the "Designated Ongoing Operations Endorsement" (*id.* at 8-9), and the "Breach of Contract Exclusion" for any failure of Spray Foam "to procure insurance" (*id.* at 9). The Disclaimer Letter denied coverage for any additional insured, including both Wythe and Dimyon, because it was "not in receipt of a written agreement between [Wythe, Dimyon,] or any other party and Spray Foam that was signed by both parties prior to the date of loss requiring additional insured coverage under Admiral's commercial general liability policy." (*Id.* at 11.)

> In addition to several reservations of rights, Mt. Hawley reserved its
>
> rights to rely on other policy terms, conditions and exclusions should additional facts or claims become known to [it] in the future. The Mt. Hawley Insurance Company

> excess policy provides follow-form coverage to the underlying Policy (unless the terms of the Mt. Hawley Insurance Company policy provide otherwise). However, although the Mt. Hawley Insurance Company policy incorporates language used in certain parts of the underlying insurance policy, Mt. Hawley Insurance Company is entitled to and shall make its own coverage determinations, and is not bound by the underlying insurance carrier's coverage determinations.

(*Id.* at 12.) Mt. Hawley also reserved

> all of its rights to supplement and/or amend [the disclaimer] letter and further deny coverage based on any other policy provision or any provisions of the **underlying insurance**, or any other defense to or limitation of coverage under the policy or otherwise available at law.

(*Id.* at 12 (emphasis in original).)

Mt. Hawley did not expressly raise as a defense that the SNIC Policy, as a primary policy, was subject to exhaustion before the Mt. Hawley Policy would pay.

On October 25, 2017, Wythe and Dimyon's defense counsel sent Mt. Hawley a copy of the Subcontract. (Pl. 56.1 ¶ 37.)

### E. Settlement of the Underlying Action

Milord, as the plaintiff, and Wythe and Dimyon, as defendants and third-party plaintiffs, each filed motions for summary judgment in the Underlying Action. (*See* Dkt. 21-20; *see also* Pl. 56.1 ¶ 15; Dkt. 21-19.) In a Decision and Order dated July 26, 2019, the court there denied Milord's motion and also denied Wythe and Dimyon's motion on the contractual indemnification claims in the Third-Party Action. (Dkt. 21-20; Def. 56.1 ¶ 39.) The court concluded that granting summary judgment on the contractual indemnification claim would be premature because Wythe and Dimyon "seek contractual indemnification only to the extent any settlement or judgment exceeds the primary liability policy limits." (Dkt. 21-20 at 4.) Without a judgment or settlement, it was too early to know whether the primary liability policy limits had been exceeded.

On September 25, 2019, the parties entered into a stipulation to dismiss the Third-Party Action without prejudice and to dismiss the Milord Action with prejudice pursuant to the defendants' offer

8

and Milord's acceptance of $1,500,000 in settlement. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 40; Dkt. 21-21 at 1.) The agreement provided that Spray Foam's carrier, Admiral, would pay the first $1,000,000, and Wythe and Dimyon's carrier, SNIC, would pay the remaining $500,000. (Def. 56.1 ¶ 40; Dkt. 21-21 at 2.)

On November 25, 2019, SNIC filed the Complaint in this Court based on diversity jurisdiction (Dkt. 1), and on January 15, 2020, Mt. Hawley filed its answer (Dkt. 12). The parties consented to Magistrate Judge jurisdiction on June 8, 2020. (Dkt. 18; Dkt. 19.) They cross-moved for summary judgment (Dkts. 21, 22), and filed oppositions (Dkts. 23, 24) and replies (Dkts. 26, 27).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The same standard applies on a cross-motion for summary judgment, *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001), but "a district court is not required to grant judgment as a matter of law for one side or the other." *Hueblein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted). Instead, "each party's motion must be examined on its own

and Milord's acceptance of $1,500,000 in settlement. (Pl. 56.1 ¶ 17; Def. 56.1 ¶ 40; Dkt. 21-21 at 1.) The agreement provided that Spray Foam's carrier, Admiral, would pay the first $1,000,000, and Wythe and Dimyon's carrier, SNIC, would pay the remaining $500,000. (Def. 56.1 ¶ 40; Dkt. 21-21 at 2.)

On November 25, 2019, SNIC filed the Complaint in this Court based on diversity jurisdiction (Dkt. 1), and on January 15, 2020, Mt. Hawley filed its answer (Dkt. 12). The parties consented to Magistrate Judge jurisdiction on June 8, 2020. (Dkt. 18; Dkt. 19.) They cross-moved for summary judgment (Dkts. 21, 22), and filed oppositions (Dkts. 23, 24) and replies (Dkts. 26, 27).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(a) states:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quotations and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The same standard applies on a cross-motion for summary judgment, *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001), but "a district court is not required to grant judgment as a matter of law for one side or the other." *Hueblein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citation omitted). Instead, "each party's motion must be examined on its own

merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121 (citing *Schwabenbauer v. Bd. Of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## DISCUSSION

The parties cross-move for summary judgment on independent grounds.

SNIC seeks summary judgment on its request for a declaratory judgment that Mt. Hawley "was obligated to defend and indemnify" Wythe and Dimyon in the Underlying Actions before the SNIC Policy was triggered. (Plaintiff's Motion for Summary Judgment at 1.) It contends that Mt. Hawley improperly relied on certain exclusions in denying coverage to Wythe and Dimyon—a contractual exclusion and a designated ongoing operations exclusion—and that Wythe and Dimyon are additional insureds under the Mt. Hawley Policy. (*Id.*)

Mt. Hawley seeks summary judgment dismissing the Complaint on the basis that the Mt. Hawley Policy is a "true excess policy [that] plainly does not apply prior to [SNIC]'s true primary policy," and because the SNIC Policy limit has not been exhausted, the Mt. Hawley Policy is not required to provide any coverage as a matter of law. (Def. Memo of Law, Dkt. 22-21 at 1, 11-19.)

The Court first evaluates Mt. Hawley's Motion, and will construe all facts in favor of SNIC, the non-moving party.

### I.   Mt. Hawley's Motion

#### A.   The Parties' Arguments

In support of its Motion, Mt. Hawley argues that the Mt. Hawley Policy "is a true excess policy [that] is only triggered once all applicable primary policies are exhausted." (Def. Memo of Law at 13.) Because the SNIC Policy is a primary policy, Mt. Hawley argues that it must be exhausted before the Mt. Hawley Policy is required to provide any coverage. The settlement agreement in the Underlying Action required payment of $500,000 beyond the Admiral Policy's coverage limit, which is below the

SNIC Policy's coverage limit of $1,000,000. Therefore, Mt. Hawley argues that its obligation to provide coverage is not triggered. (*Id.* at 11-15.)

SNIC counters that Mt. Hawley waived its priority of coverage defense pursuant to New York Insurance Law § 3420(d)(2) because it failed to raise priority of coverage in the Disclaimer Letter. (Pl. Opposition, Dkt. 23-1 at 4-8.) SNIC further argues that even if Mt. Hawley did not waive its priority of payment defense, Mt. Hawley nevertheless must pay before SNIC because the Mt. Hawley Policy required only exhaustion of the Admiral Policy, not the SNIC Policy. (*Id.* at 8-10.)

In reply, Mt. Hawley contends that Section 3420(d)(2) does not apply to priority of coverage because it does not constitute a disclaimer of coverage. (Def. Reply, Dkt. 27 at 2-3.)

### B. Whether Mt. Hawley was Required to Assert a Priority of Coverage Argument in its Disclaimer

New York Insurance Law requires an insurer to give timely written notice to an insured, injured person or other claimant when the insurer disclaims liability or denies coverage:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2). "Failure to raise a ground for disclaimer as soon as is reasonably possible precludes an insurer from later asserting it as a defense." *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 145 (N.Y. 1993) (quotations and citations omitted).

"It is well-settled, however, that 'Section 3420(d)(2) does not apply to claims between insurers, [regardless of] whether those claims are for contribution or for full defense and indemnity.'" *Old Rep. Gen. Ins. Corp. v. Century Surety Co.*, No. 17-CV-3415 (PGG), 2018 WL 4356729, at *7 (S.D.N.Y. Sept. 12, 2018), *aff'd*, 778 F. App'x 57 (2d Cir. 2019) (quoting *Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, 206 F. Supp. 3d 818, 827 (S.D.N.Y. 2016) (alteration in original)); *see also American Guar. & Liab. Ins. Co. v. State Nat'l. Ins Co*, 67 A.D.3d 488, 488 (N.Y. App. Div. 2009) (affirming trial court's finding that "the

11

protections of Insurance Law § 3420(d) were inapplicable to one insurer's claim for reimbursement from another insurer"). The plain language of Section 3420(d)(2) refers only to "the insured and the injured person or any other claimant," not to another insurance company. *See Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 407 (S.D.N.Y.2015) ("The phrase 'any other claimant' refers to 'any party that has *a claim against the insured arising under the policy*,' which by definition excludes other insurers of the insured.") (quoting *Bovis Lend Lease LMB Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 58 (N.Y. App. Div. 2005)) (emphasis and quotations in original). Moreover,

> the notice requirement of § 3420(d) is designed to protect the insured and the injured person or other claimant against the risk, posed by a delay in learning the insurer's position, of expending energy and resources in an ultimately futile attempt to recover damages from an insurer or forgoing alternative methods for recovering damages until it is too late to pursue them successfully.... [T]hese are not risks to which another insurer seeking contribution is subject.

*Royal Surplus Lines*, 806 N.Y.S.2d at 59. Stated differently,

> given § 3420(d)(2)'s purpose of protecting *insureds*, it would make little sense to hold that provision applicable to an insurer's arguments for a particular allocation of coverage liability among *insurers*. That allocation would by definition have no effect on whether the insured receives coverage—merely on which insurer must provide it.

*Country-Wide Ins. Co. v. Great American Assurance Co.*, 119 N.Y.S.3d 830, at *5 (N.Y. Sup. Ct. 2019) (emphasis in original). Because SNIC is an insurer, the timely notice requirement of Section 3420(d)(2) does not apply to its claim against Mt. Hawley.

SNIC's claim that it may avail itself of the protections of Section 3420(d)(2) because it "stands in the shoes" of Wythe and Dimyon also fails. (*See* Pl. Opposition at 2.) If Wythe and Dimyon were themselves plaintiffs in this action, they might be able to invoke the protections of Section 3420(d)(2), but SNIC may not do so on their behalf. *See Zurich Am. Ins. Co.*, 206 F. Supp. 3d at 829 (tendering carrier does not get benefit of Section 3420(d) from a tendering letter it sent on behalf of its insured); *Royal Surplus Lines*, 806 N.Y.S.2d at 60 (finding disclaimer invalid as to insured plaintiffs but timely as to insurer plaintiff).

Regardless of who is invoking Section 3420(d)(2), "the notice requirement only applie[s] to 'situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an *exclusion in the policy*.'" *Diocese*, 21 N.Y.3d at 147 (quoting *Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 138 (N.Y. 1982) (emphasis added in *Diocese*)). A defense that does not relate to an exclusion or disclaimer is "not subject to the notice requirements of section 3420(d)." *Diocese*, 21 N.Y.3d at 147; *see also id.* (neither self-insured retention, "which is effectively a deductible to the policies," nor "arguments pertaining to the appropriate methodology for allocating liability" must be timely disclaimed under Section 3420(d)(2)); *Zappone*, 55 N.Y.2d at 135-36 (timely disclaimer requirement does not apply where there is no coverage at all); *see also Pav-Lak Industries, Inc. v. Arch Ins. Co.*, 56 A.D.3d 287, 288 (N.Y. App. Div. 2008) (cited favorably in *Diocese* for the proposition that insurer did not waive deductible defense by failing to timely disclaim it "because the deductible endorsement does not bar coverage or implicate policy exclusions").

The Second Circuit has similarly recognized that Section 3420(d)(2) only applies to policy exclusions, not when a claim falls outside the scope of a policy's definition of coverage. *See Britt v. Gen. Star Indem. Co.*, 494 F. App'x 151, 153 (2d Cir. 2012) (finding district court erred by concluding that permissive use provision "operated as a policy exclusion" when it is instead "a fundamental grant of [p]olicy coverage").

At least two New York Supreme Court cases have explicitly held that Section 3420(d)(2) does not apply to priority of coverage arguments. *See Country-Wide Ins. Co.*, 119 N.Y.S.3d; *QBE Ins. Corp. v. Interstate Fire and Cas. Co.*, No. 116947/2009, 2012 WL 5829746, at *5 n. 2 (N.Y. Sup. Ct. Oct. 25, 2012) (insurer's failure to timely disclaim does not preclude the court from deciding priority of coverage defense). SNIC has not pointed to any cases that hold that a priority of coverage defense constitutes a policy exclusion.

That Mt. Hawley's priority of coverage argument will result in Mt. Hawley not paying for the

13

settlement in the Underlying Action does not convert a bar of coverage into a policy exclusion. As the Supreme Court in *Country-Wide* held,

> [W]hether § 3420(d) applies does not turn on whether an insurer's defenses would have the effect of substantially (or indeed wholly) limiting the insurer's liability, but on whether those defenses have effect because they 'bar coverage' under the policy 'or implicate policy exclusions.'

119 N.Y.S. at *5 (quoting *Diocese*, 21 N.Y.3d at 147).

Thus, regardless of whether SNIC is seeking relief in its own name or in the shoes of its insured, Mt. Hawley is not precluded by the timely notice requirement of Section 3420(d)(2) from raising its priority of coverage defense as a basis for summary judgment.

### C. Whether Mt. Hawley's Policy was Excess to SNIC's Policy

Mt. Hawley contends that, because the SNIC Policy is a primary policy and the Mt. Hawley Policy is an excess policy, as a matter of law, the Mt. Hawley Policy provides no coverage until the SNIC Policy is exhausted. SNIC argues that Mt. Hawley must provide coverage because Dimyon and Wythe are additional insureds under the Mt. Hawley Policy.

"In determining a dispute over insurance coverage, [New York courts] first look to the language of the policy." *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (N.Y. 2002) (citing *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 354 (N.Y. 1978)). "Where the provisions of the policy 'are clear and unambiguous, they must be given their plain and ordinary meaning….'" *U.S. Fid. & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (N.Y. 1986) (quoting *Government Employees Ins. Co. v. Kligler*, 42 N.Y.2d 863, 864 (N.Y. 1977)).

"In order to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 716 (N.Y. 2007) (citing *State Farm Fire & Cas. Co. v. LiMauro*, 65 N.Y.2d 369 (N.Y. 1985)); *see also Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co. et al.*, 53 A.D.3d 140, 147 (N.Y. App. Div. 2008). The three policies here are the Admiral Policy, the Mt. Hawley Policy, and the SNIC Policy. There is

no dispute that the Admiral Policy was a primary policy, and it has already been exhausted through payment of the first $1,000,000 of the settlement.

The Mt. Hawley Policy is unambiguously an excess liability policy and repeatedly describes itself as such.[9] (*See* Mt. Hawley Policy at 5, 9, 25, 26, 27, 29, 30, 31.) The Mt. Hawley Policy's coverage section states that it "shall apply: (a) only in excess of the **underlying insurance**; [and] (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance." (*Id.* at 9.) The "Other Insurance" section also expressly designates the Mt. Hawley Policy as excess in relation to any other insurance available to cover a loss, "other than insurance that is specifically excess of the insurance afforded by this policy." (*Id.* at 14-15.) This provision applies to "insurance available to any insured as an additional insured under primary or excess policies." (*Id.* at 15.) *See Century Sur. Co. v. Rukh Enterprises, Inc.*, No. 17-CV-2418 (JMF), 2019 WL 356948, at *2 (S.D.N.Y. Jan. 29, 2019) (similar terms supported summary judgment finding that insurance policy was an excess policy). Thus, in order to be excess of the Mt. Hawley Policy, any other available insurance must be "specifically excess of" the Mt. Hawley Policy.

The SNIC Policy does not specify that it is excess of the Mt. Hawley Policy. Rather, it describes itself as a 'Commercial General Liability' policy, stating that it is primary, and only excess over "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement…" (SNIC Policy at 3, 16.) By its own terms, the SNIC Policy was a primary policy as to Wythe and Dimyon, the sued parties in the Underlying Action, and excess over any other *primary* policy applicable here, *i.e.,* the Admiral Policy. (*Id.* at 16.) The Mt. Hawley Policy is an excess, not a

---

[9] In its Rule 56.1 Statement, SNIC describes the Mt. Hawley Policy as a "follow-form excess liability" policy with "a $2,000,000 per-occurrence limit" (Pl. 56.1 ¶ 22-23), but without explanation, in its Counterstatement of Material Facts, SNIC denies that the Mt. Hawley Policy is a follow form excess policy with a $2,000,000 per-occurrence limit. (Pl. Counter 56.1 ¶ 21-23.) In its denial, SNIC directs the Court to the policy itself, the plain wording of which the Court now considers.

primary, policy, and, therefore, not covered by this provision.

SNIC argues that, because the Subcontract required that Wythe and Dimyon be designated as additional insureds, they must be so considered under the Mt. Hawley Policy. (Dkt. 21-22 at 10 ("It is clear that Spray Foam agreed to assume the tort liability of Dimyon under the [Subcontract]").) And, because the Mt. Hawley Policy provides coverage "for its insured and any parties that are additional insureds," if "96 Wythe and Dimyon are rightful additional insureds under the Mt. Hawley Policy, it must follow that Mt. Hawley's policy is triggered." (Pl. Opposition at 9.)

The fallacy in this argument is that while SNIC is correct that "an excess carrier, such as Mt. Hawley, follows the exhaustion of a primary policy" (*id.*), such a primary policy is not limited to the Admiral Policy. As discussed *supra*, the SNIC Policy provided primary coverage to Wythe and Dimyon, the defendants in the Underlying Action. The Mt. Hawley Policy only provides coverage in excess of the two primary policies here, both the Admiral Policy and the SNIC Policy. Thus, regardless of whether Wythe and Dimyon are additional insureds under the Mt. Hawley Policy, the Mt. Hawley Policy expressly states that its coverage is "in excess of, and shall not contribute with … insurance available to any insured as an additional insured under primary or excess policies." (Mt. Hawley Policy at 15.) By its plain terms, the Mt. Hawley Policy remains excess to SNIC even if Wythe and Dimyon are additional insureds.

In any event, any requirements in the Subcontract cannot change the relative priority of coverage between the Mt. Hawley Policy and the SNIC Policy. Where a subcontract requires a subcontractor to procure insurance, the subcontract terms govern the rights between the parties to the subcontract, while the terms of the insurance policy govern the scope of insurance coverage. *See United States Fid. & Guar. Co. v. CNA Ins. Co.*, 208 A.D.2d 1163, 1165 (N.Y. App. Div. 1994); *see also LiMauro*, 65 N.Y.2d at 373 (an insurance company has "the right … to rely upon the terms of its own contract with its insured"). Thus, when a subcontractor procures insurance required under a

subcontract, but that insurance does not provide the level of coverage required by the subcontract, the terms of the insurance policy, not the subcontract, control the insurer's obligations. *See, e.g.*, *Travelers Indem. Co. v. American. & Foreign Ins. Co.*, 286 A.D.2d 626, 626 (N.Y. App. Div. 2001); *Bovis*, 53 A.D.3d at 145 ("An insurance policy is a contract between the insurer and the insured. Thus, the extent of coverage (including a given policy's priority vis-à-vis other policies) is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage."). Therefore, notwithstanding whatever obligations Spray Foam undertook through the Subcontract, it is the language of the Mt. Hawley Policy which governs Mt. Hawley's obligations toward its insureds, not the Subcontract.

As the foregoing makes clear, the Mt. Hawley Policy is excess to the SNIC Policy. Because the Underlying Action has settled and the amount of the settlement did not exhaust the coverage provided by the SNIC Policy, the plain terms of the Mt. Hawley Policy do not provide any coverage and SNIC is not entitled to recover from Mt. Hawley.

The Court accordingly grants Mt. Hawley's Motion.

## II. **SNIC's Motion**

SNIC seeks a declaratory judgment in this action pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that Mt. Hawley had a duty to defend and indemnify Wythe and Dimyon in the Underlying Action. A declaratory judgment is available in federal court "to resolve a 'real question of conflicting legal interests.'" *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations omitted). The Declaratory Judgment Act requires that there be a "case of actual controversy" in order for a court to declare legal rights and other legal relations. 28 U.S.C. § 2201(a). The Declaratory Judgment Act confers upon district courts "unique and substantial discretion" in determining whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "If, at any point, a court discerns the absence of any actual, ongoing controversy, the court must dismiss the

17

action as moot." *Med-Plus, Inc. v. Am. Cas. Co. of Reading, PA*, No. 16-CV-2985 (NGG)(JO), 2017 WL 3393824, at *4 (E.D.N.Y. Aug. 4, 2017) (citing *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 15-CV-07063 (JGK), 2017 WL 945189, at *1 n.1 (S.D.N.Y. Mar. 9, 2017)).

Because of the Court's finding above that Mt. Hawley's coverage obligations are not triggered until the SNIC Policy limit is exhausted, and because the Underlying Action settled with prejudice for less than the combined limits of the primary Admiral and SNIC Policies, there is no remaining case or controversy between SNIC and Mt. Hawley. Accordingly, arguments as to the merits of Mt. Hawley's other bases for denying coverage in the Disclaimer Letter are moot, and SNIC's request for a declaration that Mt. Hawley's denial of coverage was incorrect is denied.

## CONCLUSION

For the reasons above, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendant and close this case.

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 29, 2021